UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDREW JAKUB
HITSMAN,

        Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.

_____/

Case No. 2:16-cv-12708
District Judge Stephen J. Murphy, III
Magistrate Judge Anthony P. Patti

# REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 15), GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 18) and AFFIRM THE COMMISSIONER'S DECISION

**I. RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment, **GRANT** Defendant's motion for summary judgment, and **AFFIRM** the Commissioner's decision.

**II. REPORT**

Plaintiff, Andrew Jakub Hitsman, brings this action under 42 U.S.C. §§ 405(g), 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income (SSI) benefits. This matter is before the United States Magistrate Judge for

1

a Report and Recommendation on Plaintiff's motion for summary judgment, the Commissioner's cross motion for summary judgment, and the administrative record (DE 13).

## A. Background

Plaintiff received SSI benefits based on disability as a child; however, on February 14, 2005, it was determined that he "was no longer disabled as of February 1, 2005." (R. at 85.) A hearing was conducted on August 15, 2007, and, on November 5, 2007, ALJ Earl A. Witten issued an unfavorable decision. (R. at 63-94.) On December 12, 2012, Plaintiff protectively filed an application for SSI benefits. (*See* R. at 15, 23.) Plaintiff then filed an application for SSI benefits on January 29, 2013, initially alleging that he has been disabled since September 7, 1986, his birth date, but subsequently amending the onset date to December 28, 2012. (*See* R. at 31, 153.) Plaintiff alleges disability based upon Asperger syndrome, bipolar disorder and learning disability. His application was denied in April 2013. He sought a *de novo* hearing before an Administrative Law Judge ("ALJ"), which was conducted on August 4, 2014. At that time, he amended his onset date to December 28, 2012. (*See* R. at 15, 31, 165, 329-330.)

On September 26, 2014, ALJ JoErin O'Leary determined that Plaintiff was not disabled within the meaning of the Social Security Act. Plaintiff requested review of the hearing decision. On May 27, 2016, the Appeals Council denied

Plaintiff's request for review. Thus, the ALJ's decision became the Commissioner's final decision. Plaintiff then timely commenced the instant action on July 21, 2016. His testimony and medical records will be discussed as necessary in the analysis which appears below, in lieu of summarizing them here.

### B. The Administrative Decision[1]

At **Step 1** of the ALJ's decision denying benefits, she determined that Plaintiff has not engaged in substantial gainful activity since December 12, 2012, the application date. (R. at 17.) At **Step 2**, the ALJ determined that Plaintiff has the following severe impairments: Asperger's Disorder, attention deficit hyperactivity disorder (ADHD), anxiety disorder, depressive disorder, and substance abuse. (R. at 17.) At **Step 3**, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (R. at 17-19.) Prior to **Step 4**, the ALJ determined that Plaintiff has the residual functional capacity (RFC) to perform "a full range of work at all exertional levels," but "does have nonexertional limitations." (R. at 19-22.) At **Step 4**, the ALJ determined that Plaintiff has no past relevant work. (R. at 22.) At **Step 5**, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there are jobs that exist in

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

significant numbers in the national economy that Plaintiff can perform. (R. at 22-23.)

### C. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the Court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

**D.    Analysis**

At issue in Plaintiff's appeal are the ALJ's RFC's nonexertional assessments. Specifically, the ALJ determined that Plaintiff . . .

> . . . is limited to performing simple, routine, and repetitive tasks, but not at a production rate pace. The claimant is limited to simple work-related decisions. He should never interact with the general public, but is able to occasional[ly] interact with supervisors and coworkers. The claimant is limited to few changes in a routine work setting.

(R. at 19.) The ALJ then explained that these limitations reflected Plaintiff's "no more than moderate difficulties" in social functioning and concentration, persistence, and pace (CPP). (R. at 21.)

Plaintiff's motion presents the sole argument that the ALJ improperly applied the treating physician rule in her assignment of weight to the opinion evidence (and does not appear to challenge the ALJ's conclusion regarding Plaintiff's physical exertional capabilities), an argument which the Commissioner opposes. (DE 15 at 2, 5-9, DE 18 at 9-14.) For the reasons stated below, the Court should conclude that the ALJ appropriately assessed the opinion evidence as to Plaintiff's mental health nonexertional limitations.

### 1. Consideration of opinion evidence when treating physician's opinion is discounted

If the ALJ does not afford controlling weight to a treating physician's opinion, as is the case here, the ALJ must meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Wilson*, 378 F.3d at 544 (citing 20 C.F.R. § 404.1527(d)(2), now 20 C.F.R. 404.1527(c)(2)). However, there is no *per se* rule that requires a written articulation of each of the six regulatory or "*Wilson* factors" listed in 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6). *Tilley v. Comm'r of Soc. Sec.*, 394 F.App'x 216, 222 (6th Cir. 2010). In other words, the regulations do not require "an exhaustive factor-by-factor analysis." *Francis v. Comm'r of Soc. Sec.*, 414 F.App'x 802, 804-805 (6th Cir. 2011) (citing 20 C.F.R. § 404.1527(d)(2), now 20 C.F.R. § 404.1527(c)(2)).

### 2. The ALJ's consideration of the opinion evidence

#### a. Joe DeLoach, Ph.D. (state agency consultant)

On April 26, 2013, state agency consultant Joe DeLoach, Ph.D. performed a mental RFC assessment. (R. at 104-105.) Among other things, Dr. DeLoach opined that Plaintiff "would likely need to work alone or in a job which requires no to minimal contact with co-workers and the public[,]" and "retains the capacity to perform simple and repetitive tasks on a sustained basis." (R. at 106.)

Within the Step 4 RFC determination, the ALJ assigned Dr. DeLoach's opinion "great weight," explaining that it:

> . . . is *consistent* with the overall record, which shows that while the claimant complains of concentration difficulties, his attention and concentration are adequate. Further, the evidence that shows that the claimant is able to go to stores and interacted well with mental health personnel *support[s]* the doctor's opinion.

7

(R. at 21 (emphasis added).) In other words, the ALJ considered the supportability and/or consistency factors when assigning weight to Dr. DeLoach's opinion. 20 C.F.R. §§ 404.1527(c)(3),(4), 416.927(c)(3),(4). Moreover, having identified Dr. DeLoach as a "state agency reviewing psychologist," (R. at 21), the ALJ considered the specialization factor, and, at least implicitly, considered the lack of an examining or treatment relationship. 20 C.F.R. §§ 404.1527(c)(1),(2),(5), 416.927(c)(1),(2),(5).

Plaintiff's attack upon this assignment of weight appears to be limited to pointing out that Dr. DeLoach is "a non-examining, non-treating source[,]" or that Dr. DeLoach is "a state reviewing psychologist" whose opinion is *not consistent*, as opposed to *consistent with*, "the overall record[.]" (*See* DE 15 at 5, 8; R. at 21.) However, the ALJ's treatment of Dr. DeLoach's opinion should be affirmed. First, as illustrated above, the ALJ's considered many of the 20 C.F.R. §§ 404.1527(c), 416.927(c) factors in assigning "great weight" to Dr. DeLoach's opinion. Thus, I disagree with Plaintiff that the ALJ's reasons for doing so were "flawed." (DE 15 at 9.)

Second, even though Dr. DeLoach did not examine Plaintiff, the Court notes that "[f]ederal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1). Relatedly, it seems that Dr. DeLoach had both

8

Dr. Ronan's March 5, 2013 opinion and Dr. Caputo's April 16, 2013 opinion before him at the time of his April 26, 2013 mental RFC explanation. (R. at 103, 105-106; *see also* DE 18 at 13.)

Third, to the extent Plaintiff argues that the ALJ should have adopted the opinion(s) of an examining source (such as CEs Drs. Ronan and Caputo or independent psychiatrist Dr. Rangwani) or treating source (such as Dr. Gruca or therapists Price), the burden at Steps 1 through 4 remains with Plaintiff. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("during the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five."). For the reasons stated below, Plaintiff has not shown that the ALJ's reliance on evidence from Plaintiff's examiners and/or treaters, or lack thereof, was erroneous.

        **b.     George F. Ronan, Ph.D. (consultative examining psychologist)**

Dr. Ronan's March 5, 2013 psychiatric / psychological medical report notes, among other things, that Plaintiff "is likely to understand, retain, and follow simple instructions[,]" and "can be expected to adjust to reasonable changes in a work environment." (R. at 490.)[2] The ALJ assigned this opinion "great weight," on the

---

[2] Plaintiff describes Dr. Ronan as a "one-time" consultative examiner and, in so doing, references his March 5, 2013 report. (*See* DE 15 at 5, 8 and 9; R. at 487-491.) The Court notes that Dr. Ronan was also a signatory to the December 20, 2004 psychiatric / psychological medical report by Michael Brady, Ph.D. (R. at

9

basis that it was "consistent with the doctor's thorough examination of the claimant." (R. at 21; *see also* R. at 20.) In other words, the ALJ considered the supportability and/or consistency factors when assigning weight to Dr. Ronan's opinion. 20 C.F.R. §§ 404.1527(c)(3),(4), 416.927(c)(3),(4). Moreover, having twice identified Dr. Ronan as a "consultative examining psychologist," (R. at 20, 21), the ALJ considered the specialization factor, and, at least implicitly, considered the lack of an examining or treatment relationship. 20 C.F.R. §§ 404.1527(c)(1),(2),(5), 416.927(c)(1),(2),(5).

Pointing out that Dr. Ronan is "a one-time consultative examiner[,]" Plaintiff contends that, because Dr. Ronan's report states that "claimant's chart did not contain any additional information[,]" and appears to have been based upon Plaintiff's "presentation" on that date (*see* R. at 490), Dr. Ronan was not aware of contrary opinions from Plaintiff's prior examinations, nor would he have been aware of the records and opinions from Gratiot Community Mental Health (GCMH). (DE 15 at 5, 8.)

The Court should affirm the ALJ's treatment of Dr. Ronan's opinion. First, as illustrated above, the ALJ's considered many of the 20 C.F.R. §§ 404.1527(c), 416.927(c) factors in assigning "great weight" to Dr. DeLoach's opinion. Thus, I disagree with Plaintiff that the ALJ's reasons for doing so were "flawed." (DE 15

---

237-240.) In any event, this report is not at issue here, as it pre-dates the December 28, 2012 amended onset date.

at 9.)  Second, Plaintiff's argument does not clarify to which "prior examinations" or which GCMH records he refers.  (DE 15 at 8.)  Third, to the extent Plaintiff is referring to anything within Exhibits 1F, 2F, 3F, 4F, 6F or certain portions of Exhibits 5F and 7F, these contain documents predating December 28, 2012, the amended onset date.  (*See* R. at 230-326, 333-438, 441-474, 478-479.)  As such, these records would not be from what is generally considered to be the relevant period.  *See, e.g., Headla v. Astrue*, No. 11-CV-10632, 2012 WL 1441342, at *6 (E.D. Mich. Apr. 4, 2012) (Grand, M.J.), *report and recommendation adopted*, No. 11-CV-10632, 2012 WL 1445402 (E.D. Mich. Apr. 26, 2012) (Steeh, J.) ("while the ALJ generally only considers evidence from the alleged disability onset date through the date last insured . . . .") (citing *King v. Secretary of Health and Human Services,* 896 F.2d 204, 205–06 (6th Cir. 1990)).[3]

Fourth, to the extent Plaintiff is referring to those portions of 5F and Exhibit 7F that are dated December 28, 2012 or December 31, 2012 and signed by Paul G.

---

[3] While the Sixth Circuit does not have a hard-and-fast rule labeling pre-onset date evidence as irrelevant or barred, it suggests that the ALJ's consideration of such evidence is discretionary.  *DeBoard v. Comm'r of Soc. Sec.*, 211 F. App'x 411, 414 (6th Cir. 2006) ("We do not endorse the position that **all** evidence or medical records predating the alleged date of the onset of disability, or evidence submitted in support of an earlier proceeding, are **necessarily** irrelevant or **automatically** barred from consideration by *res judicata.* We recognize that evidence presented at an earlier hearing or predating the onset of disability, when evaluated *in combination with later evidence,* **may** help establish disability. This is particularly true when the disabling condition is progressive.") (italics in original) (bold added).

Gruca, M.D. (*see* R. at 327-332, 439-440, 475-476, 480-485),[4] Plaintiff has not shown how Dr. Ronan's March 5, 2013 report would have been altered by Dr. Gruca's December 2012 records.[5] In sum, Plaintiff has not successfully argued that Dr. Ronan's report was deserving of less than the "great weight" assigned to it by the ALJ.

        c.        **Janette S. Caputo, Ph.D., Psy.D. (consultative examining psychologist)**

Dr. Caputo issued a psychological report dated April 16, 2013. (R. at 494-499.) Among other things, she opined that Plaintiff "is able to understand, retain,

---

[4] Clearly, because they equal or post-date Dr. Ronan's March 5, 2013 report, Plaintiff cannot be referring to the remaining 3 exhibits. (R. at 487-493 [Ex. 8F], 494-501 [Ex. 9F]), 502-532 [Ex. 10F]).

[5] The record contains evidence that Plaintiff was treated by Dr. Gruca of Alma Family Practice, P.C. from January 2012 through December 2012. (*See* R. at 322-382, 389-437, 439-440, 475-476, 478-485; *see also* R. at 172-173.) It appears that Dr. DeLoach considered Dr. Gruca's records from April, May, July and December 2012 when arriving at the conclusion that Plaintiff's personal physician "shows consistent improvement in his symptoms recently and I believe that MER has the greatest credibility." (R. at 100, 100, 106, 110.) Moreover, on at least two occasions, the ALJ cited Dr. Gruca's December 2012 records, once to support that Plaintiff's "ADHD was well controlled with Adderall[,]" and another time to illustrate that Plaintiff "was able to meet his needs at home." (R. at 20, 329, 440.) If Plaintiff intended to challenge the ALJ's assessment of his treating physician's opinions, then it was incumbent upon him to develop such an argument. Instead, it seems to the Court that Plaintiff's motion's only *specific* references to Dr. Gruca's records are Dr. Gruca's December 2012 diagnoses and Dr. Caputo's April 2013 consideration of Dr. Gruca's July 9, 2012 and December 28, 2012 records. (DE 15 at 5, 9.) In other words, amongst Plaintiff's treaters, it seems he is only challenging the ALJ's assessment of therapist Price's opinions. (*See* DE 15 at 9.)

and has the skills to follow simple and some moderately complex instructions but is highly unlikely to do so secondary to his behavioral disorders." (R. at 499.) The ALJ assigned this opinion "little weight," as Dr. Caputo "relied heavily on the claimant's *subjective* complaints and not on objective evidence." (R. at 21 (emphasis added); *see also* R. at 20.)

The Court should affirm the ALJ's treatment of Dr. Caputo's opinion(s). First, Plaintiff points out that Dr. Caputo examined him "on two different occasions," and, on the second occasion, opined that Plaintiff's "personality characteristics and behaviors, even when controlled, are a significant detriment to employment[,]" and "potential for employment is quite limited." (DE 15 at 5-6, 499.) Yet, the Court notes that Dr. Caputo's previously issued psychological report dated December 1, 2008 is not especially relevant here, as it pre-dates the December 28, 2012 amended onset date. (R. at 313-319.) Thus, Plaintiff's references to it are not particularly efficacious. (R. at 5, 8-9.) *See, e.g., Headla*, 2012 WL 1441342, at *6.

Moreover, the ALJ's assignment of little weight to the latter report is apparently linked to the finding that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible . . .[,]" and/or that "the preponderance of credible evidence establishes that the claimant experienced no greater than, at most, mild to moderate functional

limitations upon his ability to perform basic work activities . . . ."  (R. at 20, 22.)  Thus, the ALJ's reason for discounting this opinion is clear to the Court and, likewise, should have been clear to Plaintiff.  *See*, *e.g.*, SSR 96-2P (S.S.A. July 2, 1996) ("the notice of the determination or decision . . . must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.").

Second, Plaintiff contends that Sunil Rangwani, M.D.'s July 2, 2014 psychiatric evaluation, which indicated "serious symptoms," is *consistent with* Dr. Caputo's April 16, 2013 psychological report.  (DE 15 at 6, R. at 494-499, 502-505.)  By way of background, Dr. Rangwani noted that Plaintiff had "no abnormal psychomotor activity[,]" fine mood, appropriate affect, organized thought process and "grossly intact" memory, and diagnosed Plaintiff with marijuana dependence, most likely alcohol abuse, a history of ADHD, and a questionable history of autism spectrum disorder.  (R. at 503-504.)  In addition, Dr. Rangwani had a lengthy discussion with Plaintiff "regarding substance use issues[,]" and encouraged him "to look into alternative treatment rather than relying on marijuana and any other illicit drug use."  (R. at 504.)  Although the ALJ did not make an express assignment of weight to Dr. Rangwani's evaluation, the ALJ cited this report as evidence of "normal psychomotor activity[,]" identified Dr. Rangwani as Plaintiff's "treating psychiatrist," and concluded that Plaintiff's "marijuana use is

not material to a finding of disability . . . ." (R. at 20-21, 503-504.) Nonetheless, the Court should affirm the ALJ's treatment of Dr. Rangwani's opinion. Other than characterizing Dr. Rangwani as an "independent" examiner whose July 2, 2014 opinion is consistent with Dr. Caputo's April 16, 2013 opinion or those of therapist Price (*see* DE 15 at 6), Plaintiff has not shown how the ALJ's treatment of independent examiner Dr. Rangwani's or consultative examiner Dr. Caputo's opinions, or any failure by the ALJ to consider the records of treating therapist Price, was erroneous. In fact, as the Commissioner points out, Dr. Rangwani's July 2, 2014 examination revealed several normal findings and therapist Price's April 17, 2006 notes, which, although outside of the relevant period and containing findings inuring to Plaintiff's claim of disability, also include documentation of notes that he "was cooperative," "appears to have average intelligence," and "all thought processes [are] seemingly intact." (DE 18 at 12, R. at 503-504, 452, 294.)

Third, Plaintiff claims that the ALJ's characterization of Dr. Caputo's examination as heavily based on "subjective complaints and not on objective evidence[,]" is, itself, "inconsistent with the information contained in Dr. Caputo's reports[,]" as Dr. Caputo's report acknowledges having had access to several records. (DE 15 at 8-9, 21; R. at 498.) Still, of the records Dr. Caputo acknowledged reviewing, only two are from the time period relevant here: **(a)** the December 28, 2012 notes from Alma Family Practice (signed by Paul G. Gruca,

15

M.D.) (R. at 327-332, 439-440, 475-476, 480-485); and, **(b)** the February 20, 2013 third party adult function report signed by Plaintiff's mother (R. at 176-183). (R. at 498.) Moreover, even if the ALJ inaccurately interpreted Dr. Caputo's report as not relying on objective evidence (R. at 21), simply pointing out this apparent inaccuracy does not show how either of these particular pieces of evidence would or should have altered the ALJ's assignment of weight to Dr. Caputo's April 16, 2013 decision. (*See* DE 15 at 9.) This is significant where, as here, the ALJ expressly considered Dr. Gruca's December 2012 records (R. at 20), the ALJ cited to Plaintiff's mother's report no less than three times (R. at 18, 22), and Plaintiff does not present developed arguments challenging the ALJ's assessment of treating physician Dr. Gruca's opinons or Plaintiff's credibility.

### d. Cindy L. Price, M.S.W., L.M.S.W. (treating therapist)

There is record evidence from therapist Price as early as February 2004 and as late as December 2006. (R. at 282-295, 442-468.) Indeed, Ms. Price's records from February 16, 2005 and April 16, 2006 were expressly mentioned in the prior ALJ decision dated November 5, 2007. (R. at 91.)

In this appeal, Plaintiff points the Court's attention to Ms. Price's records, in particular an annual assessment dated April 17, 2006 (R. at 447-453; *see also* R. at 289-295, 282-286). (DE 15 at 6, 9.) In addition, Plaintiff points out that the

opinions of clinical therapist Price were "derived from her treatment of the claimant in he[r] professional capacity."  (DE 15 at 7.)

However, there is no reason for the Court to "bite at this apple." To the extent Plaintiff argues that the ALJ should have considered his treating therapist's records as an "other source" under SSR 06-03P or 20 C.F.R. §§ 404.1513(d), 416.913(d) (DE 15 at 6-7), it does not account for the fact that the April 17, 2006 record to which Plaintiff refers is well before the December 28, 2012 onset date. As such, these records are not within the generally relevant period, and – contrary to Plaintiff's suggestion that they were "ignored" (DE 15 at 9) – it would have been an appropriate exercise of the ALJ's discretion to exclude them on that basis. *See, e.g., Headla*, 2012 WL 1441342, at *6; *DeBoard*, 211 F. App'x at 414.[6]

### G. Conclusion

The ALJ having appropriately addressed the opinions of state agency psychological consultant Dr. DeLoach and CE psychologists Drs. Ronan and Caputo, Plaintiff having failed to show otherwise, and there being no harmful error in any failure to consider records pre-dating December 28, 2012, the Court should

---

[6] To be sure, Plaintiff cites, without any discussion, to one of 20 pages of "assessment therapist" Jon Artman's January 2014 notes (which themselves are comprised of *an initial assessment* and *a treatment plan*). (DE 15 at 6, R. at 521; *see also* R. at 513-525, R. at 526-532.) However, Plaintiff's argument is otherwise limited to his treating therapist's (Price's) opinion. (*See* DE 15 at 6-7, 9.) As such, the Undersigned does not interpret this citation as a separate, developed argument that the ALJ improperly evaluated therapist Artman's January 2014 notes, which post-date the December 28, 2012 onset date.

affirm the ALJ's treatment of the opinion evidence as to Plaintiff's mental health nonexertional limitations.

I therefore conclude that the ALJ appropriately assessed the opinion evidence as to Plaintiff's restrictions. Accordingly, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (DE 15), **GRANT** Defendant's motion for summary judgment (DE 18), and **AFFIRM** the Commissioner of Social Security's decision.

### III.  PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: August 18, 2017

s/Anthony P. Patti
Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE

### Certificate of Service

I hereby certify that a copy of the foregoing document was sent to parties of record on August 18, 2017, electronically and/or by U.S. Mail.

s/Michael Williams
Case Manager for the
Honorable Anthony P. Patti